# THOMAS H. O'NEAL

## v.

# THE WABASH AVENUE BAPTIST CHURCH et al.

1. VENDOR AND PURCHASER—*of the contract and sale—rescission and its effects— deed by vendor to another—sufficient declaration of forfeiture.* B executed a contract to N for the conveyance of certain premises, for a specified sum, payable in installments, N agreeing, in addition, to pay all the taxes. Time was made the essence of the contract, and contained a covenant, that B might, on failure of performance, elect to declare the contract at an end, and all payments made upon it forfeited. N failed to pay the taxes, and also, the last installment of the purchase money, which fell due June 18th, 1855, and on the 29th of August following, B conveyed the lands to T, who recorded his deed, of which conveyance B gave N notice. N thereupon, during the next month of September, called upon B, who, it is claimed, extended the time of payment to N, to gather his crops, and never after gave to N other notice, that he had elected to determine the contract; and in February, 1865, B conveyed, also, the premises to N. *Held,* in an action of ejectment brought by N, against a grantee of T, that the contract between B and N became forfeited by the act of B in making the deed to T, of which N had notice, and that by such deed T became vested with the legal title to the premises; that B having parted with his title by the deed to T, he could not extend the time of payment to N, and that N took nothing by the subsequent deed of 1865, to him by B.

2. SAME.—But, in such case, had the contract remained in full vigor, and the rights of no other parties intervened, the deed of 1865 would relate back to the date of the contract. In this case, it is otherwise, as B became wholly divested of his title by his deed to T, which constituted a forfeiture of the contract.

3. SAME.—That after the declaration of forfeiture, a tender of the money, or a promise by B to convey, after he had parted with his title, could not restore the contract.

4. SAME—*premises encumbered.* Nor can it be said, that B was in default at the time he made the deed to T, so that he could not declare a forfeiture, by reason of the fact that the title was encumbered by a previous mortgage, executed by B to one S, since, by a decree in chancery, in a suit for partition, such mortgage was declared to be no encumbrance upon the title.

5. SAME—*of the right to declare a forfeiture without tendering a deed—relief against can only be had in a court of equity.* Under such a contract, the right to declare a forfeiture for non-performance, without the tender of a deed, must be sustained by a court of law. If there is any hardship, or ground for relief, the purchaser must apply to a court of equity.

Writ of Error to the Superior Court of Chicago.

The opinion states the case fully.

Mr. John W. Waughop, for the plaintiff in error.

Messrs. Sleeper, Whiton & Durham, for the defendants in error.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action of ejectment, for a lot of ground in the City of Chicago, and a verdict and judgment for the defendants.

To reverse the judgment, plaintiff brings the record here by writ of error, and makes several points, the most important of which we have considered.

It is conceded, that Stephen Bronson, jr., was the common source of title, and the first proposition of plaintiff is, therefore, not denied.

It is claimed by plaintiff, and not denied, that Bronson, on the eighteenth of June, 1852, executed a contract to plaintiff to convey the premises in question to him, on payment of seven hundred and twenty-two dollars thirty-seven cents, at the times specified in the contract, with interest, and with a covenant, on the part of plaintiff, to pay the taxes and assessments, ordinary and extraordinary, upon the property. It also made time an essential part of the contract, and contained the usual covenants in such contracts, that the vendor might elect, on failure of performance, to declare the contract to be null and void, and all the payments made upon it to be forfeited, &c.

The contract was acknowledged and recorded on the day of its execution.

The last payment was due on the 18th of June, 1855, and was not paid by plaintiff, nor were any taxes on the land paid by him, when, on the 29th of August, of that year, Bronson and wife conveyed the premises by deed, with covenants against their own acts, to Sherman P. Tracy, which was recorded two days thereafter. Of this deed, Bronson duly notified the plaintiff.

Stimulated by this notice, as we presume, the plaintiff came to Chicago in September, 1855, having the notice with him, and there, it is claimed, Bronson extended the time of payment to plaintiff, until he could gather his crop, and Bronson gave no notice to him after the extension of time, that he intended to forfeit the contract. On the 27th of February, 1865, Bronson executed a deed of the premises to the plaintiff.

The first point arises here, and grows out of the question, in whom was the legal title to the premises on the 27th of February, 1865 ? Certainly not in Bronson, for he had conveyed the premises to Tracy, in the month of August, 1855, and consequently could convey none to plaintiff.

The idea entertained by the plaintiff's counsel, and pressed upon the court, that this deed related back to the 18th of June, 1852, the date of the contract, so as to cut out subsequent *bona fide* purchasers, is, as he expresses it, fallacious. The deed to Tracy was made in August, 1855. There the legal title then rested. A forfeiture had been notified by Bronson to the plaintiff, as, also, the execution of this deed. In September, thereafter, Bronson had it not in his power to extend the time of payment as claimed, having parted with the title. The record informed O'Neal that the person he should look to for the legal title, was Tracy; that Bronson had then no connection with it, and surely Bronson's agreement, at that time, to extend the time of payment, was of no value, for the thing had passed beyond his control. A tender to him by plaintiff, under such a condition of things, though

in gold, of the balance due, with interest, could have no effect whatever, for Bronson, by no act of his, could, at that time, have conveyed title to any one.

Here, then, was a contract forfeited, and so declared by the vendor, by making the deed to Tracy, which act was held a sufficient declaration in the case of *Chrisman* v. *Miller et al.*, 21 Ill. 227, and plaintiff was duly notified of it. Had the contract been in full vigor, and no rights of other parties intervening, the plaintiff might insist his deed of 1865 had relation back to the contract of 1852, and so might rely upon *Snapp* v. *Pierce et al.*, 24 Ill. 156, and *Stone* v. *Smoot*, 39 ib. 409, and *Hatch* v. *Bigelow*, ib. 546.

The plaintiff, however, insists that Bronson was not in a position to declare a forfeiture when he conveyed to Tracy, inasmuch as at that time the title was encumbered by a previous mortgage executed by Bronson to David L. Sayer.

The record of the case of *Loomis* v. *Riley*, 24 Ill. 307, disposes of this objection. The decree in chancery in partition of premises, of which these in controversy were part, found that he had no interest in the premises arising out of the mortgage, consequently there was no incumbrance on the title by reason of this mortgage, to prevent Bronson from declaring a forfeiture.

After it was declared, the contract was dead, and a tender of the money, or a promise by the vendor to convey, when he had parted with his title, could not restore its vitality.

It follows, that the consent of Bronson to extend the time, after he had conveyed to Tracy, could not be received in disparagement of Tracy's title, nor could Bronson's waiver of a forfeiture at the time alleged, prejudice the rights of a *bona fide* grantee. Bronson, at that time, had nothing to waive; he had, in August preceding, declared a forfeiture by his deed of that date.

Upon the question of the right to declare a forfeiture for non-payment of the last installment, without a tender of a

deed, we think, under such a contract as this, and in a court of law, the right must be sustained, and if there is any hardship or ground for relief, the purchaser must apply to a court of equity, not wishing, by any means, to intimate that in this case there exists any ground for such an application.

The conveyances from Tracy, through to the defendants in possession, are all regular, and establish paramount title in them.

The judgment must be affirmed.

*Judgment affirmed.*